```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: OCT 2 4 2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x
                                   :
UNITED STATES OF AMERICA           :      INFORMATION
                                   :
        - v. -                     :      14 Cr. CRIM 715
                                   :
DAVID POST,                        :
                                   :
        Defendant.                 :
                                   :
- - - - - - - - - - - - - - - - - x

## COUNT ONE

(Conspiracy to Commit Securities Fraud)

The United States Attorney charges:

### Relevant Entities and Individuals

1. At all times relevant to this Information, Ardea Biosciences, Inc. ("RDEA"), was a biotechnology company headquartered in San Diego, California. On April 23, 2012, AstraZeneca, a pharmaceutical company, publicly announced the acquisition of RDEA.

2. At all times relevant to this Information, ViroPharma Incorporated ("VPHM"), was a pharmaceutical company headquartered in Exton, Pennsylvania. On November 11, 2013, Shire PLC, a pharmaceutical company, publicly announced the acquisition of VPHM.

3. At all times relevant to this Information, Idenix Pharmaceuticals, Inc. ("IDIX"), was a biopharmaceutical company headquartered in Cambridge, Massachusetts. On June 9, 2014, a



pharmaceutical company that operates in New Jersey (the "Pharma Company") publicly announced the acquisition of IDIX.

4. Between in or about 2010 and in or about August 2014, a co-conspirator not named as a defendant herein ("CC-1") was employed at the Pharma Company as a Senior Finance Analyst in the Financial Evaluation and Analysis Group.

5. From approximately 2009 to October 2014, DAVID POST, the defendant, was employed at a bank located in Manhattan (the "Bank").

### The Insider Trading Scheme

6. Between in or about 2010 and in or about August 2014, CC-1 provided DAVID POST, the defendant, with material, non-public information (the "Inside Information") that CC-1 acquired as part of his employment at the Pharma Company. POST then made profitable securities trades based on the Inside Information provided by CC-1.

7. DAVID POST, the defendant, and CC-1 attended Rutgers Business School during the same time period and both graduated from Rutgers Business School in 2010. Since 2010, POST and CC-1 maintained a social relationship, which included telephone communications, e-mail correspondence, and social gatherings.

8. As an employee of the Financial Evaluation and Analysis Group of the Pharma Company, CC-1 performed work in connection with numerous potential and actual corporate

transactions, including acquisitions. CC-1 also had access to a computer directory maintained by the Pharma Company which contained material, non-public information related to potential acquisitions by the Pharma Company.

9. In violation of the Pharma Company's policies and in breach of his duties to the Pharma Company, CC-1 on multiple occasions passed to DAVID POST, the defendant, Inside Information related to potential future acquisitions by the Pharma Company, including the identities of the companies which were to be acquired (the "Target Companies"). POST then traded in the securities of the Target Companies. The Target Companies were subsequently acquired, in one instance by the Pharma Company, and the prices of the shares of the Target Companies increased after the acquisitions were announced publicly. POST then exited his positions in the shares of the Target Companies, thereby profiting from the movement in stock price. From this illegal trading, POST earned profits of at least approximately $737,000. In exchange for the Inside Information, POST paid CC-1 $57,000 in cash, which represented a portion of CC-1's share of the proceeds from the scheme.

### The Insider Trading in RDEA Stock

10. On or about February 17, 2012, Merrill Lynch contacted multiple companies, including the Pharma Company, to gauge

3

interest in a potential acquisition of Merrill Lynch's client, RDEA.

11. In 2012, as part of his employment at the Pharma Company, CC-1 performed work relating to a potential acquisition of RDEA. In connection with this work, individuals at the Pharma Company, including CC-1, had access to Inside Information relating to the potential acquisition of RDEA.

12. A cell phone was subscribed to CC-1 during the relevant time period (the "CC-1 Phone"). A separate cell phone was subscribed to DAVID POST, the defendant, during the relevant time period (the "POST Phone").

13. On February 27, 2012, at approximately 5:13 p.m., the CC-1 Phone called the POST Phone and engaged in a call lasting approximately six minutes.

14. On February 28, 2012, DAVID POST, the defendant, began purchasing shares of RDEA, at an initial price of $20.95 per share. Prior to this date, POST had never purchased shares of RDEA. POST continued purchasing shares of RDEA until April 18, 2012, ultimately purchasing approximately 9,800 shares. On April 23, 2012, AstraZeneca publicly announced that it would acquire RDEA for $32 per share. POST subsequently sold his RDEA shares, for a profit of approximately $105,000.

4

15. In or about October 2012, DAVID POST, the defendant, gave CC-1 approximately $7,000 in cash, which represented a portion of CC-1's share of the proceeds from the scheme.

### The Insider Trading in VPHM Stock

16. In 2013, in the course of his employment at the Pharma Company, CC-1 performed work relating to a potential acquisition of VPHM. In connection with this work, individuals at the Pharma Company, including CC-1, had access to Inside Information relating to the potential acquisition of VPHM.

17. On September 25, 2013, beginning at approximately 6:10 p.m., the CC-1 Phone made two consecutive calls to the POST Phone for calls totaling approximately nine minutes.

18. On September 26, 2013, DAVID POST, the defendant, began purchasing shares of VPHM, at an initial price of $38.50 per share. Prior to this date, POST had never purchased shares of VPHM. POST continued purchasing shares of VPHM until October 28, 2013, ultimately purchasing approximately 3,200 shares. On November 11, 2013, Shire PLC publicly announced that it had agreed to acquire VPHM for $50 per share. POST subsequently sold his VPHM shares, beginning on December 9, 2013, for a profit of approximately $54,000.

### The Insider Trading in IDIX Stock

19. During early 2014, individuals at the Pharma Company performed work relating to a potential acquisition of IDIX by

the Pharma Company. The Pharma Company ultimately acquired IDIX, which acquisition was publicly announced on June 9, 2014. Records provided by the Pharma Company show that CC-1 was not assigned to work on the IDIX acquisition. However, other records indicate that beginning as early as May 5, 2014, CC-1 began accessing documents pertaining to the IDIX acquisition using his work computer.

20. On May 20, 2014, at approximately 4:08 p.m., CC-1 received an email from another Pharma Company employee at CC-1's Pharma Company email address. That email contained an earlier email chain which stated in part that the Pharma Company had submitted an initial non-binding proposal for acquisition of a company referred to under the codename "Project Invincible." Project Invincible was used within the Pharma Company as the codename for the potential acquisition of IDIX by the Pharma Company. The email further stated that based on "initial CEO/banker feedback" it appeared that the Pharma Company's offer was sufficient to move into the due diligence stage of the acquisition process.

21. Within ten minutes of receiving the email described above in paragraph 20, CC-1 began conducting internet searches related to IDIX.

22. On May 20, 2014, at approximately 5:38 p.m., the CC-1 Phone sent a text message to the POST Phone.

6

23. On May 20, 2014, beginning at approximately 8:12 p.m., CC-1 accessed three files in the Project Invincible folder using his work computer.

24. On May 20, 2014, at approximately 8:44 p.m., the CC-1 Phone called the POST Phone and engaged in a call lasting approximately twelve minutes.

25. Approximately two minutes after the call concluded, DAVID POST, the defendant, attempted to purchase shares of IDIX at a limit price of $5 per share. This order was ultimately not executed. The following day, POST began purchasing shares of IDIX at an initial price of approximately $6.32 per share. Prior to this date, POST had never purchased shares of IDIX. POST continued purchasing shares of IDIX until June 6, 2014, ultimately purchasing approximately 31,000 shares. Records, including internet protocol logs, show that POST executed a number of these trades from the Bank, which is located in Manhattan. On June 6, 2014, shares of IDIX closed at $7.23 per share.

26. On June 9, 2014, prior to the opening of the market, a public announcement was made that the Pharma Company had agreed to acquire IDIX for $24.50 per share. On the date of this announcement, the share price of IDIX opened at $24.03 and closed at $23.79. DAVID POST, the defendant, began selling IDIX

shares the same day, at an initial price of approximately $23.99 per share, for a profit of approximately $579,000.

27. In or about July or August 2014, DAVID POST, the defendant, gave CC-1 approximately $50,000 in cash, which represented a portion of CC-1's share of the proceeds from the scheme.

## Insider Trading in Other Securities

28. On multiple other occasions between in or about 2010 and 2014, CC-1 passed Inside Information to DAVID POST, the defendant, related to other securities. CC-1 obtained this Inside Information during the course of his employment at the Pharma Company, in violation of Company policies and in breach of CC-1's fiduciary duties.

29. In or about 2012, CC-1 acquired material, non-public information relating to Alimera Sciences ("ALIM"), in the course of his employment by the Pharma Company. CC-1 subsequently passed this material, non-public information to DAVID POST, the defendant, who started purchasing shares of ALIM in April 2012.

30. In or about 2012, CC-1 acquired material, non-public information relating to Virtualscopics ("VSCP"), in the course of his employment by the Pharma Company. CC-1 subsequently passed this material, non-public information to DAVID POST, the defendant, who started purchasing shares of VSCP in November 2012.

31. In or about 2013, CC-1 acquired material, non-public information relating to Optimer Pharmaceuticals ("OPTR"), in the course of his employment by the Pharma Company. CC-1 subsequently passed this material, non-public information to DAVID POST, the defendant, who started purchasing shares of OPTR in April 2013.

### The Conspiracy

32. From in or about 2010 through in or about August 2014, in the Southern District of New York and elsewhere, DAVID POST, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit an offense against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

### Object of the Conspiracy

33. It was a part and object of the conspiracy that DAVID POST, the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section

9

240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon the purchaser and seller, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

### Means and Methods of the Conspiracy

34. Among the means and methods by which DAVID POST, the defendant, and CC-1 would and did carry out the conspiracy were the following:

    a. POST and CC-1 set up a shared e-mail account in order to communicate more securely about the insider trading scheme. POST and CC-1 left each other coded messages about the scheme in the shared e-mail account which they would save as draft e-mails. After leaving such a message, the drafter of the message then sent the other individual a coded e-mail message via another e-mail account or text message via phone in order to alert the other individual about the presence of the saved, draft e-mail message. The intended recipient of the draft

10

message then logged into the shared e-mail account, read the draft e-mail message, and deleted the draft e-mail message.

  b. During the course of the conspiracy, POST purchased disposable cellular phones for his use and for CC-1's use. POST and CC-1 agreed that they would use the disposable cellular phones to communicate more securely about the insider trading scheme. During the course of the conspiracy, on multiple occasions, POST and CC-1 used the disposable cellular phones to communicate through calls and text messages.

### Overt Acts

35. In furtherance of the conspiracy and to effect its illegal object, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

  a. In or about May 2014, CC-1 acquired material non-public information relating to a potential acquisition of IDIX by the Pharma Company, where he was employed at the time.

  b. On or about May 20, 2014, CC-1 placed a call to DAVID POST, the defendant.

  c. On May 21, 2014, POST entered an order to buy approximately 1,000 shares of IDIX. The trade was executed by POST from POST's office in Manhattan.

  d. On or about June 9, 2014, after the Pharma Company publicly announced its agreement to acquire IDIX, POST entered an order to sell 4,000 shares of IDIX.

entered an order to sell 4,000 shares of IDIX.

(Title 18, United States Code, Section 371.)

## COUNTS TWO THROUGH FOUR

(Securities Fraud)

The United States Attorney further charges:

36. The allegations contained in paragraphs 1 through 31, 34, and 35, are repeated and realleged as though fully set forth herein.

37. On or about the dates set forth below, in the Southern District of New York and elsewhere, DAVID POST, the defendant, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, used and employed manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon the purchaser and seller, to wit, on the basis of material, non-public information that POST

obtained from CC-1, which CC-1 obtained in connection with his employment at the Pharma Company, POST executed and caused to be executed the securities transactions listed below:

| Count | Dates | Transaction |
|---|---|---|
| 2 | February 2012 through April 2012 | Purchase of 9,800 shares of RDEA |
| 3 | September 2013 through October 2013 | Purchase of 3,200 shares of VPHM |
| 4 | May 2014 through June 2014 | Sale of 31,000 shares of IDIX |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Sections 240.10b-5 &
240.10b5-2; and Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATIONS

38. As a result of committing one or more of the foregoing securities fraud offenses alleged in Counts One through Four of this Information, DAVID POST, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the securities fraud offenses, including but not limited to a sum of money in United States currency which was derived from proceeds traceable to the commission of the securities fraud offenses.

### Substitute Asset Provision

39. If any of the above-described forfeitable property, as

13

a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981;
Title 28, United States Code, Section 2461; Title 18, United States Code, Sections 371 and 2; Title 15, United States Code, Sections 78j(b) and 78ff; and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.)

*Preet Bharara*
PREET BHARARA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---
---

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---
---

**UNITED STATES OF AMERICA**

v.

**DAVID POST,**

                        **Defendant.**

---

**INFORMATION**

14 Cr.

(18 U.S.C. §§ 2, 371;
15 U.S.C. §§ 78j(b) & 78ff;
17 CFR §§ 240.10b-5 & 240.10b5-2.)

                        PREET BHARARA
                United States Attorney.

---

10/24/14 Waiver + Information filed; Deft arraigned on the information. Deft pres. w/attys Craig Carpenito and __; AUSA Jessica Masella pres; Court reporter Sam Mauro pres.; PTS Officer __ pres. Deft enters a plea of guilty to the Count 1,2,3,4 of the information; Bail - 500K PRB - cosigned by 2 FCRP's within 2 weeks; Surr passport; Travel restricted to the Continental US; PTS by phone or internet. Sentencing control date set for 2/6/15 @ 11:00 am.

                                      Hellerstein, J.